## PHILIP CAREY MFG. CO. v. DEAN.
### No. 4191.

District Court, S. D. Ohio, W. D.
July 22, 1930.

Edward J. Brunenkant, of Cleveland, Ohio, for plaintiff.

H. E. Mau, U. S. Dist. Atty., and Frank Hier, Asst. U. S. Dist. Atty., both of Cincinnati, Ohio, and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Ottamar Hamele and Isadore Graff, Sp. Attys., Bureau of Internal Revenue, all of Washington, D. C., for defendant.

NEVIN, District Judge.

This is an action at law brought by the plaintiff company against the collector of internal revenue, for the refund of certain income and profits taxes paid for the taxable years 1918, 1919, and 1920.

On December 20, 1924, a document entitled "Income and Profits Tax Waiver" was signed by the Commissioner of Internal Revenue and by the plaintiff company, by its secretary. To this document was affixed the corporate seal of the plaintiff company. This instrument purports to be a waiver of the statute of limitations running against the government in connection with the assessment and collection of income and profits tax-

es for the taxable years 1918 and 1919. Such instrument is authorized by section 250 (d) of the Revenue Act of 1921 (42 Stat. 227). The question of the validity of said instrument, as it affects the taxable year 1919, is not in dispute. There were a number of questions involved in the case originally, but these were disposed of, so that upon final submission there remained but a single issue for determination. A jury was waived, and by consent of all the parties the cause was submitted to the court for its consideration and determination. The case came on to be heard before the court upon the pleadings, an agreed statement of facts as to certain matters, and evidence adduced in open court and now contained in the record. It is set forth in the agreed statement of facts, among other things, that:

Par. 17. "The only issue remaining in this suit relates to the validity and effect of the instrument filed December 20, 1924. * * * All other issues herein have been settled by an agreement of the parties."

Par. 18. "If the court holds that the instrument filed December 20, 1924, * * * was invalid, and, furthermore, that plaintiff is not estopped to assert such invalidity, judgment should be for the plaintiff" (in certain amounts agreed upon).

Par. 19. "If the court holds that the instrument filed December 20, 1924, was valid, or if invalid, that plaintiff is estopped to assert such invalidity, judgment should be for" defendant (as the cause now stands before the court).

Briefly, and summarized, the facts are substantially as follows:

On March 15, 1919, plaintiff filed a tentative income and profits tax return for the taxable year 1918. On June 16, 1919, plaintiff filed what it claimed to be an original completed income and profits tax return for the taxable year 1918, and on June 11, 1921, plaintiff filed an amended income and profits tax return for said taxable year 1918. On October 17, 1924, the Commissioner of Internal Revenue notified plaintiff that an examination of its income and profits tax return and books of account disclosed an additional tax for the year 1918, of $158,279.02. By letter, dated November 12, 1924, plaintiff protested the determination of the Commissioner as disclosed in the Commissioner's letter of October 17, 1924, and plaintiff requested that it be granted an oral hearing with representatives of the Bureau of Internal Revenue, with the result that on December 8, 1924, a conference was held in Washington,

D. C., between representatives of the plaintiff company and representatives of the Bureau of Internal Revenue. On December 20, 1924, the "Income and Profits Tax Waiver," hereinbefore referred to, was signed in the manner and by the parties as above set out. By letter, dated January 24, 1925, the Commissioner of Internal Revenue notified the plaintiff that a final audit of its income and profits tax return for the calendar year 1918 disclosed an additional tax of $151,475.27, which amount was assessed in April, 1925, and paid by the plaintiff company on May 19, 1925. On April 16, 1929, plaintiff filed a claim for refund of said sum, to wit, $151,475.27, paid by it for the calendar year 1918. On July 20, 1929, the Commissioner of Internal Revenue notified plaintiff that its said claim for refund was rejected. On December 29, 1923, plaintiff executed and filed with the Commissioner of Internal Revenue an income and profits tax waiver, the validity of which is not questioned by plaintiff in this case, and which it is agreed extended the time for a determination, assessment, and collection of taxes due for the year 1918 from plaintiff company to December 29, 1924.

In the foregoing it is to be noted that during the time that the waiver, signed December 29, 1923, was still effective, to wit, on November 12, 1924, plaintiff, in a letter, protested the determination of the Commissioner as disclosed in the Commissioner's letter of October 17, 1924. In its letter just referred to, among other things, is the following:

"The taxpayer respectfully requests a conference at such time as may suit the convenience of the Income Tax Unit, and on advice by the office of the Commissioner of the time and place fixed for such conference, the taxpayer will appear at such conference to present its argument."

This letter is signed by the plaintiff company (the name of the company being typewritten), by G. D. Crabbs, president, but marked in the left-hand corner at the bottom thereof, "Attest: E. L. Buse, Secretary." There also appears at the very bottom of said letter, the names of "Alfred C. Cassatt, Alfred G. Allen, Attorneys for Taxpayer First National Bank Building, Cincinnati, Ohio." And it was pursuant to such request made by the plaintiff company that on December 8, 1924, a conference was held in Washington, between the representatives of the plaintiff company and the Bureau of Internal Revenue. This conference was held just twenty-one days before the expiration of the time

within which the tax could be legally determined, assessed, and collected, as extended by the waiver, dated December 29, 1923. At that conference, Messrs. George D. Crabbs and William C. Ignatius, president and comptroller, respectively, of the plaintiff company, were present, as were also counsel for the plaintiff company.

As to the conference and other pertinent matters, Mr. Ignatius, as shown by the record, testified as follows:

"XQ26. And at that time the Commissioner then had under advice the report of his revenue agent recommending the assessment of $158,000 as additional taxes for the year 1918? A. That is probably correct.

"XQ27. And it was discussed in that conference the assessment of seven or eight thousand additional and your company officials finally succeeded in getting the representatives of the tax unit to say that they would recommend that the tax be cut down; isn't that true? A. I think so. I don't remember the exact language.

"XQ28. And that tax wasn't in fact and in truth actually reduced from that amount until some time in the early spring of 1925, was it? A. Not by a notice from Washington.

"XQ29. And you didn't know anything about it? A. It was agreed then that the reduction would be made.

"XQ30. It was agreed that it would be recommended that the reduction would be made; isn't that true? A. I can't say as to that language. Usually when we have a conference a specific agreement is reached, and from my experience it is usually carried through in accordance with that agreement.

"XQ31. It is usually carried through; but you know, as a man handling tax affairs, that an agreement is not final until the commissioner finally approves. A. Probably not.

"XQ32. And the commissioner in this case was not present at the conference, was he? A. No, sir.

"XQ33. Therefore, any tentative arrangement you gentlemen agreed upon would not become final until the commissioner passed upon it? A. I think that is the law.

"XQ34. And at the time this second waiver, Exhibit G, was signed, that matter was still in statu quo, still up in the air, wasn't is? A. Apparently.

"XQ35. You knew you were going to get an additional assessment but you did not have a definite agreement of what the assessment would be? A. Except by agreement at the conference.

"XQ36. You expect the commissioner to do what they say they will do; but up to that time that recommendation had not been finally passed upon; isn't that true? A. Hadn't been confirmed.

"XQ37. You say Mr. Buse was never held out to the tax officials at Washington as having authority to sign documents; you never held yourself out to do that, did you? A. I don't recall that I did.

"XQ38. In fact, nobody in your company held themselves out as authorized to sign documents, did they? A. Not necessarily.

"XQ39. The only thing the tax officials knew was that you and Mr. Crabbs and Mr. Cassatt and Mr. Allen came down there and spoke with authority for the company, discussed the details, and that is all they knew about it; isn't that so? A. I presume so.

"XQ40. The board of directors never delegated you or Mr. Crabbs to go to Washington; that is correct, isn't it? A. Yes, sir.

"XQ41. Nor the stockholders. That is your end of it; you handle the financial end of it, and Mr. Crabbs, and that is part of your duty, to go down there and attend to it, isn't it? A. Yes."

Mr. Edward L. Buse was the secretary of the plaintiff company; Mr. Ignatius testified that he and Mr. Buse "worked together," but that Mr. Buse did not have charge or handle income tax matters, although he (Mr. Buse, the secretary) did look after other tax matters, that is, personal property taxes and real estate taxes and state taxes, generally, for the plaintiff company. It also appears that Mr. Buse, as secretary, along with the president of the plaintiff company, signed a number of income tax returns of the plaintiff company, including the returns for the year 1918, herein referred to.

It is the contention upon the part of the plaintiff, first, that the waiver herein referred to, dated December 20, 1924, is invalid because, although signed in typewriting with the full name of the plaintiff company and with the seal of the plaintiff company affixed, it is signed on behalf of the plaintiff company by "E. L. Buse," secretary.

Plaintiff has introduced portions of the by-laws of the plaintiff company, showing just what authority the secretary of the plaintiff company had, which plaintiff claims did not include authority to sign in its behalf such a document as the waiver herein referred to.

On March 23, 1925, the board of directors of the plaintiff company passed the following resolution:

"Resolved that the acts of the officers in the general conduct of the business in the past be, and the same are, hereby approved and ratified and adopted by unanimous vote."

The court is of the opinion that under all the evidence in this case, the waiver as signed by the secretary was in and of itself valid, and that, as claimed by defendant herein, the secretary when he signed such waiver was performing a secretarial detail, one of the ordinary duties of the secretary of the plaintiff company. The effect of the act of the secretary in signing such waiver was to permit the settlement resulting from the conference of December 8, 1924, to be carried out in an orderly way. But if there should be any question as to this, the court is strongly of the opinion that there can be no question but what the action of the secretary in signing said waiver was ratified by the company, through its board of directors, by the resolution of March 23, 1925. It is true, as claimed by the plaintiff herein, that the general rule is that ratification of an act presupposes some knowledge of the act. Under all of the circumstances, as shown by the evidence in the case, the court is not convinced but what plaintiff company, through its proper officers, did have knowledge of this waiver having been signed by the secretary. Certainly such knowledge must have been brought home to counsel for the company to whom these tax matters were referred, so Mr. Ignatius testified, before the vouchers in payment of the amounts due were issued and by whom the payments were approved.

The court is of the opinion further that under such circumstances as existed in the instant case, the law would impute knowledge to the directors under the rule applied by the Supreme Court in the case of Martin v. Webb, 110 U. S. 7, 3 S. Ct. 428, 433, 28 L. Ed. 49, wherein the court say:

"Directors cannot, in justice to those who deal with the bank, shut their eyes to what is going on around them. It is their duty to use ordinary diligence in ascertaining the condition of its business, and to exercise reasonable control and supervision of its officers. They have something more to do than, from time to time, to elect the officers of the bank, and to make declarations of dividends. That which they ought, by proper diligence, to have known as to the general course of business in the bank, they may be presumed to have known in any contest between the corporation and those who are justified by the circumstances in dealing with its officers upon the basis of that course of business."

The court finds, therefore, that the instrument dated December 20, 1924, was and is valid. At the close of all the testimony, counsel for the defendant made a formal motion for judgment in favor of the defendant and to dismiss the petition and, as heretofore set out, it is agreed between the parties that in the event the court should hold that the above-mentioned instrument is valid, judgment should be rendered for the defendant. In view of the ruling just made, it is not necessary for the court to discuss or pass upon the further question raised by counsel upon both sides as to plaintiff being estopped to question the validity of the waiver of December 20, 1924.

An order may be drawn finding in favor of the defendant, and granting the prayer of its amended answer, to the effect that plaintiff's petition be dismissed at plaintiff's costs.